E-FILED
Friday, 11 June, 2021  03:15:47 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| WAYNE PATTERSON II, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  1:20-cv-01073 |
| ) | |
| MCLEAN COUNTY SHERIFF'S ) | |
| DEPARTMENT, JON SANDAGE, ) | |
| AARON KING, BRANDON JONES, ) | |
| BRENT WICK, JASON SIMMONS, ) | |
| JODY MAY, & JOHN/JANE DOES, ) | |
| ) | |
| Defendants. ) | |

# ORDER & OPINION

This matter is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim. (Docs. 16, 17). Plaintiff has responded (doc. 20), so the Motion is ripe for review. For the following reasons, Defendants' Motion (doc. 16, 17) is granted in part and denied in part.

## BACKGROUND[1]

*Pro se* Plaintiff Wayne Patterson II brought this suit under 42 U.S.C. § 1983, alleging McLean County Sheriff Jon Sandage and five individual officers ("Individual Defendants"), in their individual and official capacities, violated his

---

[1] Because the Court must accept all well-pleaded facts in the Complaint as true, *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018), the facts herein are drawn from the Amended Complaint (Doc. 7) unless otherwise noted.

rights under the Fourth and Fourteenth Amendments. (Doc. 7 at 3). His claims arise out of two incidents, one in 2016 and one in 2019. (Doc. 7 at 5, 6).

In January 2016, while he was a minor, Plaintiff, a black male, was standing with two white female peers in a parking lot near one of their homes. (Doc. 7 at 5). Two unknown McLean County Sheriff's Deputies approached the trio and said they smelled marijuana. (Doc. 7 at 5). After questioning the group, the deputies searched for and discovered marijuana possessed by Plaintiff's white peers. (Doc. 7 at 5). Plaintiff verbally denied possession of the marijuana; both white females stated more than once during the encounter that the marijuana and paraphernalia belonged to them. (Doc. 7 at 5). One of the deputies then directed the white females to "go inside." (Doc. 7 at 5). When they had entered the nearby residence, the deputies arrested Plaintiff and impounded the car in his possession. (Doc. 7 at 5–6). Neither white female was arrested. (*See* doc. 7 at 5–6).

In February 2019, Plaintiff was living in a trailer home with two white female roommates, one of whom owned the trailer. (Doc. 7 at 6). While no one was home, the owner's stepfather entered the trailer and discovered a gun and ammunition "under the bed." (Doc. 7 at 6). Her stepfather alerted the McLean County Sheriff's Department and spoke with Defendant Jason Simmons, a deputy sheriff, who determined no one associated with the residence had a Firearm Owner Identification (FOID) card. (Doc. 7 at 6). Defendant Brandon Jones, another deputy sheriff, drove to the trailer home, and the owner's stepfather let him in. (Doc. 7 at 6). Plaintiff and his roommates were questioned, and both of his roommates

acknowledged the presence of the firearm and ammunition in their home. (Doc. 7 at 6). Plaintiff was arrested for possession of stolen property and possession of a firearm without a FOID card. (Doc. 7 at 6). Neither of his white female roommates were arrested. (Doc. 7 at 6). On September 26, 2019, Plaintiff pled guilty to possession of a firearm without a FOID card and was sentenced to 18 months' court supervision. (Doc. 17-1 at 6–8).[2]

## LEGAL STANDARD

To survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint must contain a "short and plain statement" of the plaintiff's claim sufficient to plausibly demonstrate entitlement to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff is not required to anticipate defenses or plead extensive facts or legal theories; rather, the complaint need only contain enough facts to present a story that holds together. *Twombly*, 550 U.S. at 570; *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). The Seventh Circuit has consistently noted the essential function of Rule 8(a)(2) is to put the

---

[2] The exhibit attached to Defendants' Motion to Dismiss is an official record of Illinois Eleventh Judicial Circuit Court criminal proceedings in *People v. Patterson*, Case No. 2019-CM-215 (doc. 17-1), a public record the Court may take judicial notice of, *see Gen. Elec. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081–82 (7th Cir. 1997), and consider without converting the Motion to Dismiss into a motion for summary judgment, *Hensen v. C.S.C. Credit Servs*, 29 F.3d 280, 284 (7th Cir. 1994).

defendant on notice. *Divane v. Nw. Univ.*, 953 F.3d 980, 987 (7th Cir. 2020) ("A complaint must give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." (internal quotation marks omitted)).

On review of a Rule 12(b)(6) motion, the Court construes the complaint in the light most favorable to the plaintiff. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). This means the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences from those facts in favor of the plaintiff. *Id.* Allegations that are, in reality, legal conclusions are not taken as true and cannot survive a Rule 12(b)(6) challenge. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012). As Plaintiff is proceeding *pro se*, his Complaint is construed liberally and held "to a less stringent standard than formal pleadings drafted by lawyers." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

## DISCUSSION

Through this Court's preliminary screenings of the Complaint and Amended Complaint under 28 U.S.C. § 1915(e) (*see* docs. 4, 8), some of Plaintiff's claims were previously dismissed. Those that survived preliminary review are: (1) Fourth Amendment claims based on the 2016 and 2019 incidents; (2) equal protection claims against individual defendants based on the 2016 and 2019 incidents; (3) claims under Title VI of the Civil Rights Act of 1964 based on the 2016 and 2019

arrests; and (4) an equal protection claim against the Sheriff of McLean County[3] under *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658 (1978). (Doc. 17 at 2–3; *see also* docs. 4, 8). Defendants now move to dismiss these claims, arguing they are either untimely, barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), or otherwise fail to state a claim upon which relief can be granted. (Doc. 17 at 13).

## I.   Claims Arising from the January 2016 Incident

Defendants first move to dismiss all claims by Plaintiff arising from the 2016 incident as barred by the applicable statute of limitations. (Doc. 17 at 4). A two-year statute of limitations applies to Plaintiff's constitutional claims brought under 42 U.S.C. § 1983, as well as his Title VI claims. *See Savory v. Cannon*, 947 F.3d 409, 413 (7th Cir. 2020) (noting the statute of limitations for claims under § 1983 brought in federal courts sitting in Illinois is the two-year period prescribed by Illinois law); *Monroe v. Columbia Coll. Chi.*, 990 F.3d 1098, 1101 (7th Cir. 2021).(holding the same Illinois two-year limitations period applies to actions under Title VI); 735 ILCS 5/13-202 ("Actions for damages for an injury to the person . . . shall be commenced within 2 years next after the cause of action accrued . . . .").

---

[3] Plaintiff names the McLean County Sheriff's Department in addition to the Sheriff, but the McLean County Sheriff's Department is not a suable entity. It is established under Illinois law that a sheriff's department has no separate legal existence apart from the sheriff. *See Laundry Works Laundromat Tr. v. Zaruba*, 2017 IL App (2d) 160433-U, ¶ 79 (holding sheriff's office does not have a separate legal existence apart from the sheriff); *Carver v. Sheriff of LaSalle County*, 787 N.E.2d 127, 129 (2003) (noting the district court dismissed county sheriff's department on the basis that it did not have a separate legal existence apart from the sheriff). The sheriff, in its official capacity, is the "local public entity" under section 9-102 of the Illinois Tort Immunity Act, 745 ILCS 10/9-102, that is liable for any wrongdoing by the sheriff or its employees. *See Carver*, 787 N.E.2d at 138.

Because Plaintiff was a minor at the time of his 2016 arrest, the statute of limitations was tolled, and Plaintiff was permitted to bring claims arising from the 2016 incident any time before his 20th birthday. *See* 735 ILCS 5/13-211(a) ("If the person entitled to bring an action . . . at the time the cause of action accrued, is under the age of 18 years . . . then he or she may bring the action within 2 years after the person attains the age of 18 years . . . ."). Plaintiff's birth date of February 14, 1998, is included in the pleadings from the official record of state court criminal proceedings in *People v. Wayne E. Patterson*, Case No. 2019-cm-215 (doc. 17-1 at 4)—a public record the Court may take judicial notice of, *see Gen. Elec.,* 128 F.3d at 1081–82, and consider without converting the Motion to Dismiss into a motion for summary judgment, *Hensen*, 29 F.3d at 284. From this record, the Court finds Plaintiff reached the age of majority on February 14, 2016, and was therefore required to bring claims arising from the 2016 incident by February 14, 2018. *See* 735 ILCS 5/13-211(a). As Plaintiff did not file his Complaint until 2020 (doc. 1), the claims based on the 2016 incident are time-barred.

"A limitations defense is not often resolved on a Rule 12(b)(6) motion because 'a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations.' " *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 492 (7th Cir. 2017) (quoting *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009)). "But dismissal at this early stage is appropriate when the complaint alleges facts sufficient to establish that the suit is indeed tardy." *Id.* In addition to the complaint, the Court "may consider 'documents . . .

attached to the complaint, documents . . . central to the complaint and . . . referred to in it, and information that is properly subject to judicial notice.' " *Id.* at 493 n.2 (quoting *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013)). In this instance, because the tardiness of Plaintiff's claims is apparent from the complaint and the judicially-noticed state court record, "dismissal at this early stage is appropriate." *Id.* at 492. All claims arising from the 2016 incident are time-barred and will therefore be dismissed with prejudice.

## II.    Fourth Amendment Claim Arising from the 2019 Incident

Next, Defendants move to dismiss Plaintiff's Fourth Amendment claim arising from the 2019 search of the trailer as barred by *Heck* and its progeny. The *Heck* doctrine requires a district court hearing § 1983 claims to determine "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487; *Wallace v. Kato*, 549 U.S. 384, 392 (2007) ("In *Heck*, [the plaintiff] filed suit under § 1983 raising claims which, if true, would have established the invalidity of his outstanding conviction."). "But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed . . . ." *Id.*

> "For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, *see Murray v. United*

> *States*, 487 U.S. 533, 539, 108 S.Ct. 2529, 2534, 101 L.Ed.2d 472 (1988), and especially harmless error, *see Arizona v. Fulminante*, 499 U.S. 279, 307–308, 111 S.Ct. 1246, 1263–1264, 113 L.Ed.2d 302 (1991), such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful . . . ."

*Id.* at n.7.

Defendants' argument that Plaintiff's Fourth Amendment claim is barred by *Heck* is a non-starter under existing precedent. "Even if no conviction could have been obtained in the absence of the violation, the Supreme Court has held that, unlike fair trial claims, Fourth Amendment claims as a group do not necessarily imply the invalidity of a criminal conviction, and so such claims are not suspended under the *Heck* bar to suit." *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008), *cert. denied*, 556 U.S. 1235 (2009). Thus, the Seventh Circuit has "stated repeatedly that most Fourth Amendment claims can go forward despite the rule of *Heck*," *Easterling v. Moeller*, 334 F. App'x 22, 24 (7th Cir. 2009) (collecting cases), because "misconduct by the police does not (at least, need not) imply the invalidity of any particular conviction," *Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014). None of these decisions are acknowledged in the Defendants' brief; in fact, counsel cites no cases in support of this argument.

Instead, Defendants argue:

> "[Plaintiff's] allegation that the Defendants arrested him without probable cause and unlawfully searched his home, was at issue and resolved, in Plaintiff's criminal case. Plaintiff pled guilty and was sentenced on the charge of possession of a firearm without a valid FOID card *thereby contradicting his claim that the deputies did not have probable cause to place him under arrest or conduct a search* of the home. A verdict in favor of Plaintiff on his unlawful search and seizure claim *would necessarily impugn the validity of his conviction*."

(Doc. 17 at 6–7) (emphasis added). Defendants' counsel seems to suggest that a conviction (by guilty plea or otherwise) means any preceding search or seizure was supported by probable cause, and conversely, that finding a preceding search or seizure illegal necessarily invalidates the conviction (even if based on a guilty plea). This is ill-reasoned and a serious misstatement of Fourth Amendment law that ought not to have made it into a document submitted to the Court.

Moreover, the fact that Plaintiff pled guilty actually undercuts Defendants' *Heck* argument as to the Fourth Amendment claim. "[B]ecause [Plaintiff] was convicted following a guilty plea, 'the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized.' " *Easterling*, 334 F. App'x at 24 (quoting *Haring v. Prosise*, 462 U.S. 306, 321 (1983)); *see also Rollins v. Willett*, 770 F.3d 575, 576–77 (7th Cir. 2014) (holding *Heck* inapplicable to plaintiff's Fourth Amendment claim where he pled guilty to driving on a suspended or revoked license); *Ove v. Gwinn*, 264 F.3d 817, 823 (9th Cir. 2001) (plaintiffs who pled nolo contendere to a drunk driving charge could challenge the manner in which their blood was collected because their convictions derived from the plea, not the blood-evidence). As explained by the Seventh Circuit:

> [S]uppose a defendant convicted of possessing illegal drugs found on his person sued the officer who had found the drugs, alleging that the officer planted them. If he won the suit, it would imply the invalidity of his drug conviction. The suit would therefore be barred by the rule of *Heck v. Humphrey*. See, e.g., *Okoro v. Callaghan,* 324 F.3d 488 (7th Cir.2003) [sic].
>
> This case is different. Rollins pleaded guilty. There isn't any doubt that he *was* guilty—that he'd been driving on a suspended or revoked

license. If he can prove that the action of the police in forcing him to get back in his car and show them his driving papers was unconstitutional, that cannot change the fact that he was driving without a valid license. Illegal searches and seizures frequently turn up irrefutable evidence of guilt. The evidence can be suppressed if the government attempts to present it at trial, but there was no trial. A finding that the defendant was illegally seized—the finding he seeks in this suit—would therefore have no relevance to the validity of his guilty plea and ensuing conviction.

The case is like *Reynolds v. Jamison,* 488 F.3d 756 (7th Cir.2007) [sic]. The plaintiff had pleaded guilty to telephone harassment and then brought a false-arrest claim. Whether the arresting officer had probable cause to arrest the plaintiff had no bearing on the validity of the guilty plea and conviction, and so *Heck* was irrelevant. *Id.* at 767. *Lockett v. Ericson,* 656 F.3d 892 (9th Cir.2011) [sic], is similar. The plaintiff had pleaded nolo contendere to charges that he was driving under the influence and then sued the police for having searched his home without probable cause and in the course of the search having obtained evidence concerning the DUI charge. The court held that whether the search had been unlawful could not affect the plaintiff's conviction because the conviction had not been based on any evidence introduced against him, so again *Heck* was inapplicable. *Id.* at 896–97. And in this case as well.

*Rollins*, 770 F.3d at 576–77. Similarly here, Plaintiff pled guilty, meaning whether the search of his home was constitutional will have no bearing on the validity of his conviction. Thus, because a judgment in favor of Plaintiff on his unlawful search and seizure claim arising from the 2019 incident would not necessarily imply the invalidity of his conviction, Plaintiff's Fourth Amendment claim is not barred by *Heck*.[4]

---

[4] Defendants' other challenge to Plaintiff's Fourth Amendment claim will be discussed in Section IV *infra*.

### III.  Racial Discrimination Claims Arising From the 2019 Incident

In addition to his Fourth Amendment unlawful search claim, Plaintiff also brings claims of racial discrimination arising from the 2019 incident. As the Court recognized in its previous preliminary screening Order, the thrust of Plaintiff's allegations regarding racial discrimination is: "I, a black male, was treated differently than my similarly situated white female peers when I was arrested while they were not." (Doc. 4 at 10). Defendants now move to dismiss Plaintiff's equal protection and Title VI claims as (1) failing to state a claim or (2) barred by *Heck*.

### A.   *Failure to State a Claim*

Title VI of the Civil Rights Act of 1964 states: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The Court previously found Plaintiff's Title VI claim sufficient to survive preliminary screening because Plaintiff alleged the McLean County Sheriff's Department and/or McLean County is a recipient of federal funding, either directly or indirectly (doc. 1 at 5), and further alleged he was discriminated against because he is black when he was arrested while his similarly situated white companions were not (doc. 1 at 5–7). (Doc. 4 at 5).

Similarly, "[t]he Equal Protection Clause grants to All Americans 'the right to be free from invidious discrimination in statutory classifications and other governmental activity.' " *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996) (quoting *Harris v. McRae*, 448 U.S. 297, 322 (1980)). Equal Protection requires

11

similarly-situated individuals be treated similarly and "prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996); U.S. Const. amend XIV. The Court previously found Plaintiff's equal protection claim sufficient to survive preliminary screening because the allegations, taken as true, plausibly indicated he was arrested because he is a black male, while his similarly situated companions were not arrested because they are white females. (Doc. 4 at 10–11).

Defendants argue, without elaboration, that "Plaintiff's equal protection claim does not meet Rule 8's plausibility standard, because he pled guilty, and was convicted and sentenced for possession of a firearm without a valid FOID card . . . Likewise, Plaintiff's discrimination claim brought under Title VI of the Civil Rights Act of 1964 fails because of his criminal conviction." (Doc. 17 at 8). Although Defendants do not adequately explain this argument, the Court understands them to be referring back to their citation of the principle that "[p]robable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." (Doc. 17 at 7 (quoting *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006)). Defendants' argument is misplaced. First, again, there is the obvious problem of equating a subsequent conviction with the existence of probable cause. Second, Plaintiff need not anticipate a defense to survive dismissal. *See Twombly*, 550 U.S. at 570. Third, and importantly, the argument mischaracterizes the nature of Plaintiff's claim as one for "wrongful arrest, false imprisonment, or malicious prosecution," rather than

racial discrimination in violation of the equal protection clause and Title VI. (Doc. 17 at 7).

"For an equal-protection claim based on class membership to survive a motion to dismiss, a plaintiff must sufficiently allege that [similarly-situated members] were treated differently by the government based on membership in a protected class, and that the defendant acted with discriminatory intent." *Doe v. Bd. of Educ. of City of Chi.*, No. 19-cv-00263, 2020 WL 1445638, at *6 (N.D. Ill. Mar. 24, 2020) (citing *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000)). "Racial profiling, or selective enforcement of the law, is a violation of the Equal Protection Clause." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 303 (7th Cir. 2011). The elements of a selective enforcement claim are: "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race . . . ." *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (quoting *FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir. 1992)). Contrary to Defendants' argument:

> A selective-enforcement claim does not require proof that the plaintiff was arrested without probable cause or reasonable suspicion to believe that the plaintiff committed a criminal offense. *Johnson v. Crooks*, 326 F.3d 995, 999-1000 (8th Cir. 2003). Rather, the plaintiff must prove that the officer exercised his or her discretion to enforce the laws on account of the plaintiff's race, nationality, or other characteristics. *See id.* at 1000. "When the claim is selective enforcement of the traffic laws or a racially-motived arrest, the plaintiff must normally prove that similarly situated individuals were not stopped or arrested in order to show the requisite discriminatory effect and purpose." *Id.*

*Parada v. Anoka Cnty.*, 332 F. Supp. 3d 1229, 1244 (D. Minn. 2018).

Here, Plaintiff has sufficiently alleged selective enforcement in the context of his arrest for possession of a firearm without a FOID card. Plaintiff and his two white friends were similarly situated with respect to the trailer home—they all resided there and apparently had equal access to the premises. (*See* doc. 7 at 6). All three therefore shared a basic connection to the firearm as residents of the premises on which it was found. Furthermore, the two white individuals—but not Plaintiff— acknowledged the firearm being on their premises (doc. 7 at 6). This difference only highlights the alleged selective treatment of Plaintiff where the two white individuals' connection to the firearm was more inferential of culpability than Plaintiff's. The factual allegations construed in the light most favorable to Plaintiff therefore give rise to a reasonable inference that Plaintiff was treated differently than his similarly situated white companions because of his race.

Given the obvious racial difference between Plaintiff and his two friends, as well as his allegations of prior selective enforcement under similar circumstances in 2016,[5] Plaintiff's allegation of racial motive on the part of the arresting officers is worthy of exploration through discovery. At this early stage, Plaintiff need not plead more facts than necessary to give Defendants "fair notice of what the claim is and the grounds upon which it rests," *Huri v. Off. of the Chief Judge of the Cir. Ct. of*

---

[5] Although Plaintiff's independent claims arising from the 2016 incident are time-barred, the factual allegations in the Complaint relating to his 2016 encounter with Defendants can nevertheless support an inference of racial motive for his 2019 arrest.

14

*Cook Cnty.*, 804 F.3d 826, 832 (7th Cir. 2015); his allegations of racial discrimination under the equal protection clause and Title VI clear that bar.

B.    Heck Doctrine

Defendants also move to dismiss Plaintiff's discrimination claims as barred by *Heck*. (Doc. 17 at 3). Applying *Heck*, the Court must again analyze whether Plaintiff's selective enforcement (racial profiling) claim, if successful, would necessarily imply the invalidity of his outstanding conviction. *See Heck*, 512 U.S. at 486–87.

The Supreme Court has noted that selective prosecution is not a "defense" to the merits of a charge but rather an "independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). The same principle applies to a claim of selective enforcement by law enforcement officers; as Judge Gorman put it, when "a defendant raises selective enforcement as a 'defense,' . . . a defendant in essence says, ' . . . even if I did [what the plaintiff claims I did], it isn't fair that I get prosecuted and others who broke the same law don't.' " *Fed. Election Comm'n v. Friends of Evans*, No. 04-cv-4003, 2005 WL 8163039, at *1 (C.D. Ill. Feb. 8, 2005). In such a case, "[p]roof of selective enforcement will not negate the . . . allegations - in other words, it will not serve as a defense to the charges . . . ." *Id.* at *2; *see also Muhammad ex rel. J.S. v. Abington Twp. Police Dep't*, 37 F. Supp. 3d 746, 756 (E.D. Pa. 2014) (noting plaintiff's selective enforcement claim does not hinge on the plaintiff's innocence of the criminal charge).

Many courts have nevertheless held that *Heck* bars selective enforcement claims "if a successful claim for racially discriminatory enforcement of the criminal law would implicate a plaintiff's conviction and sentence . . . ." *Goldsby v. Kaschmitter*, No. 14-cv-00032, 2016 WL 1367737, at *5 (D. Idaho Apr. 6, 2016), *aff'd sub nom. Lamont-Goldsby v. Kaschmitter*, 712 F. App'x 701 (9th Cir. 2018); *see, e.g., Cano-Diaz v. City of Leeds, Ala.*, 882 F. Supp. 2d 1280, 1290–91 (N.D. Ala. 2012) ("[I]f [Plaintiff] proved that the City of Leeds officer who pulled her over did so for purely discriminatory motives based on her race or ethnicity, such proof of the illegality of the stop would invalidate any convictions resulting therefrom."); *Watson v. Shumate*, No. 18--P460, 2018 WL 6728572, at *3 (W.D. Ky. Dec. 21, 2018) ("In the present case, a finding that Detective Barry violated the Constitution by arresting/charging Plaintiff based on his race would necessarily imply the invalidity of his continued confinement"); *Washington v. Clark*, No. 14-192, 2014 U.S. Dist. LEXIS 48600, at *3 (W.D. Wash. Apr. 7, 2014) ("*Heck* also applies to Plaintiff's . . . equal protection claims because those claims simply employ alternative legal theories to launch attacks on the same searches that uncovered the evidence leading to Plaintiff's conviction."); *Glover v. Kenosha Cnty. Police Dep't,* No. 13-cv-1164, 2013 WL 6097102, at *2 (E.D. Wis. Nov. 20, 2013) ("Were this court to decide that his conviction is based on evidence acquired via an unconstitutional search or due to racial profiling, this would certainly imply that his conviction is invalid.").

As in the Fourth Amendment context, however, "misconduct by the police does not (at least, *need not*) imply the invalidity of any particular conviction." *Moore*

16

*v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014) (emphasis added); *see also Evans v. Poskon,* 603 F.3d 362, 363–64 (7th Cir. 2010) ("Many claims that concern how police conduct searches or arrests are compatible with a conviction."). Thus, in *Mordi v. Zeigler*, the Seventh Circuit held the plaintiff's racial profiling claim was not barred by *Heck* where he complained of "improper racial profiling [that] led to his traffic stop," not the validity of his subsequent conviction based on a guilty plea. 870 F.3d 703, 707–08 (7th Cir. 2017). In that case, the court explained:

> A plaintiff is the master of his own complaint . . . and so we must examine what [the plaintiff] is asking for, before we can decide whether he may pursue his section 1983 action or if the *Heck* line of cases stands in his way. See [sic] *Gilbert v. Cook*, 512 F.3d 899, 901–02 (7th Cir. 2008) . . . [The plaintiff] insists that he is complaining only about the improper racial profiling that led to his traffic stop, and about the officers' decision to prolong his detention while they waited for the drug-sniffing dog to arrive. If he were to prevail on either or both of these points, his conviction would be unaffected.

*Id.* at 707. In other words,

> even if [the plaintiff] were to prevail on his racial-profiling and prolonged-detention arguments, the discovery of the cocaine found within the car would be just as secure, his guilty plea would stand, and his conviction would, too. All he can hope for in his Fourth Amendment case would be some form of damages for the loss of his time and the dignitary insult inflicted by racial discrimination.

*Id.* at 708 (emphasis added). The court also distinguished the case from *Okoro v. Callaghan*, 324 F.3d 488 (7th Cir. 2003), where the plaintiff's claim "was just a disguised way of asserting his innocence." *Id.* at 708. There, the plaintiff "wanted to argue that the police, who were searching for heroin, had actually stolen gems and cash from him," so the court found he "was really raising a fundamental argument *about the evidence that was used to convict him . . . .*" *Id.* (emphasis added). By

contrast, where an equal protection claim would not necessarily invalidate a conviction, courts have held *Heck* inapplicable. *See, e.g., Holland v. Ind. Dep't of Corr.*, 92 F.3d 1187 (7th Cir. 1996) ("[Plaintiff's] equal protection challenge . . . is not barred by *Heck* because it does not tend to invalidate the results of the disciplinary proceeding."); *Luck v. Westchester Med. Ctr.*, No. 17-cv-9110, 2020 WL 564635, at *8 (S.D.N.Y. Feb. 4, 2020) ("Plaintiff's equal protection claim, which is premised on Police Defendants' failure to perform an accident reconstruction as part of their investigation of the accident, would not necessarily invalidate her conviction."); *Kirkland v. Morgievich*, No. 04-cv-1651, 2008 WL 5272028, at *9 (D.N.J. Dec. 16, 2008) ("[T]his Court joins other Courts in this District in holding that the *Heck* bar does not apply to Fourteenth Amendment claims for selective enforcement based on racial profiling.") (collecting cases).

Here, it is worth reiterating that Plaintiff pled guilty. *See Rollins*, 770 F.3d at 576–77. Plaintiff's claim is thus unlike a selective enforcement claim in which the plaintiff is challenging the evidence obtained, say, during an illegal traffic stop based on racial profiling, in which case a successful selective enforcement claim may invalidate the evidence used to convict, *see, e.g., Clark*, 2014 U.S. Dist. LEXIS 48600, at *3. In addition, Plaintiff's Complaint does not make any mention of his conviction. (*See* doc. 7). Rather, Plaintiff's primary argument is Defendants "discriminate[d], target[ed], and arrest[ed]" him based on race, and this conduct caused "humiliation, arrest . . . and irreparable harm." (Doc. 7 at 7–8). To the extent Plaintiff's claim focuses on the harm from targeting and arrest, it appears more

18

analogous to the one at issue in *Mordi*. *See* 870 F.3d at 707–08. His claim also does not appear to be "just a disguised way of asserting his innocence," *id.* at 708, as Plaintiff alleges a FOID inquiry "determined no one associated with the residence had a valid FOID card" and the two other white residents of the home acknowledged the presence of the firearm, yet only he was arrested for the violation. (Doc. 7 at 6). In other words, Plaintiff's guilty plea, considered in conjunction with the well-pleaded factual allegations read in the light most favorable to him, suggest the nature of Plaintiff's selective enforcement claim could be: "the Defendants' investigation revealed all three of us may have violated the law, yet it was discriminatorily enforced against only me." In other words, "I broke the law, but 'it isn't fair that I get [arrested] and others who broke the same law don't' " because of race. *Friends of Evans*, 2005 WL 8163039, at \*1.[6] To the extent Plaintiff's selective enforcement claims arise from his targeting and arrest, as distinguished from any challenge to his conviction that was based on a guilty plea, the Court finds his discrimination claims do not necessarily imply the invalidity of his conviction and are therefore not barred by *Heck*.

---

[6] Plaintiff's Response gets this backwards, stating "Defendants' choice not to arrest the Caucasian individuals proves there was no crime committed by any of the three individuals involved." (Doc. 20 at 2). This is based on the mistaken premise that officers lack discretion to decline to arrest someone who has broken the law. Officers undoubtedly have such discretion; the issue arises when such discretion is exercised based on impermissible criteria such as race.

However, Plaintiff may not seek damages or other relief for selective enforcement incompatible with his conviction.[7] As in *Mordi*, "[a]ll he can hope for" in his racial profiling case "would be some form of damages for the loss of his time and the dignitary insult inflicted by racial discrimination." 870 F.3d at 708.

## IV.   Individual Defendants

Alternative to dismissal based on *Heck* or failure to state a claim, Defendants argue Plaintiff has not adequately alleged the personal involvement of each Individual Defendant in the purported violations arising out of the 2019 incident. (Doc. 17 at 11).

### A.   Title VI

Defendants contend that because Title VI prohibits discrimination only by "any program or activity receiving Federal financial assistance," 42 U.S.C. § 2000d, the Individual Defendants cannot be held liable for violations of Title VI. (Doc. 17 at 8–9).

> Although neither the United States Supreme Court nor the Court of Appeals for the Seventh Circuit has addressed [the question whether individuals can be sued under Title VI] directly, the answer can be found in Title IX of the Civil Rights Act, which was "modeled after Title VI" and "operate[s] in the same manner." *Rogers v. Office of the Attorney General*, 2017 WL 2864950, at *2 (N.D. Ind. July 5, 2017) (quoting *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 286 (1998)); *Raven v. MATC*, 2009 WL 10677318, at *2 (W.D. Wis. Oct. 20, 2009) (same). *See also C.S. v. Couch*, 843 F. Supp. 2d 894, 905 n.14 (N.D. Ind. 2011) (noting same in dicta). The Court of Appeals for the Seventh Circuit has held that a Title IX claim can be brought only against a recipient of federal grant money and not an

---

[7] For example, Plaintiff's request for "[e]quitable relief . . . in the form of expungement of Plaintiff['s] criminal record" (doc. 7 at 9) would be incompatible with his conviction and barred by *Heck*.

individual. *Smith v. Metropolitan School District Perry Township,* 128 F.3d 1014, 1019-20 (7th Cir. 1997) (discussing Congress's rationale for limiting private rights of action under Title IX). *See also Raven*, 2009 WL 10677318, *2 (relying on same to dismiss individual Title VI claims).

*Griffin v. UW Sys. Bd. of Regents*, No. 19-cv-277, 2019 WL 5218980, at *4–5 (W.D. Wis. Oct. 16, 2019), *reconsideration denied*, No. 19-cv-277, 2020 WL 65026 (W.D. Wis. Jan. 7, 2020), *motion to certify appeal denied*, No. 19-cv-277, 2020 WL 838037 (W.D. Wis. Feb. 20, 2020), and *appeal dismissed*, No. 20-1220, 2020 WL 4607577 (7th Cir. Feb. 27, 2020). In light of this authority, Defendants are correct that Title VI claims ordinarily cannot be brought against individuals.

Although Plaintiff's Amended Complaint contains a conclusory allegation that "[t]he McLean County Sheriff's Department *and* the named individual defendants are recipients of federal financial assistance . . . ," (doc. 7 at 3 (emphasis added)), "the mere fact that the Individual Defendants are employed by the McLean County Sheriff' does not mean they individually are recipients of federal funds," *Rogers*, 2017 WL 2864950, at *3. The Motion to Dismiss is granted as to Plaintiff's Title VI claims against Defendants King, Jones, Wick, Simmons, and May; Plaintiff's Title VI claim against the McLean County Sheriff[8] remains. If Plaintiff has facts suggesting Individual Defendants are the rare individuals who themselves receive federal grant money, he can remedy this deficiency in an amended complaint.

---

[8] The McLean County Sheriff, not the Sheriff's Department, is the suable entity and proper municipal defendant. *See supra* note 3.

B.   *Section 1983*

Next, Defendants argue Plaintiff's allegations fall short in tying the Individual Defendants to the unconstitutional conduct asserted in violation of the Equal Protection Clause and Fourth Amendment under § 1983. (Doc. 17 at 11–12). A § 1983 claim will lie against those individuals personally responsible for the constitutional violation. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2011). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. This can include having "known about the conduct, facilitated it, approved it, condoned it, or turned a blind eye for fear of what they might see." *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017) (citations, internal quotation marks, and alterations omitted). Additionally, "plaintiffs may not rely on 'vague references to a group of "defendants," without specific allegations tying the individual defendants to the alleged unconstitutional conduct.' " *Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013) (quoting *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008)). A § 1983 plaintiff must "ground his legal conclusions in a sufficiently plausible factual basis" that places each defendant "on notice of what exactly [he or she] might have done to violate his rights under the Constitution." *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009).

Some portions of Plaintiff's Amended Complaint directed at the Individual Defendants are merely general and "formulaic recitation[s] of the cause of action . . . ." *Id.* at 582. For example, Plaintiff alleges "unconstitutional actions" and "overtly

discriminatory practices by Defendants Sandage, King, Jones, Wick, Simmons, May and Persons Yet Unknown" (doc. 7 at 8); that Individual Defendants "target[] African-American persons based on their race" (doc. 7 at 8), and that "Defendants violated Plaintiff's constitutional rights based on Plaintiff's race" (doc. 7 at 8). These allegations are conclusory and therefore fail under *Iqbal*. *See Brooks*, 578 F.3d at 582. Plaintiff's *factual* allegations regarding each Individual Defendant's involvement in the alleged unreasonable search, unlawful arrest, or racial discrimination arising from the 2019 incident will be addressed in turn.

### 1. Unlawful Entry / Search of Trailer

Plaintiff alleges Defendant Deputy Brandon Jones drove a squad car to the trailer on February 15, 2019, attempted to enter the trailer but found the door locked, and then was let in by Plaintiff's housemate's stepfather, who apparently had a key. (Doc. 7 at 6). Defendant Jones, along with two other Individual Defendants, also prepared the ensuing incident report. (Doc. 7 at 7). These allegations do nothing to tie Defendant Jones to Plaintiff's racial discrimination claim for selective enforcement of the law in violation of the Equal Protection Clause, and the Motion to Dismiss is therefore granted with respect to Plaintiff's equal protection claim against Defendant Jones.

Although these allegations do tie Deputy Jones to the entry and search of the trailer, as pled, they are insufficient to make out a plausible claim against him. The factual allegations viewed in the light most favorable to Plaintiff only show that Deputy Jones was allowed entry to the trailer (and presumably allowed to search it)

by Robert Nicholas, the stepfather of the trailer's owner, who possessed a key.[9] Though these allegations tie Deputy Jones to the entry of the trailer, they are insufficient to put him on notice of any wrongdoing on his part, since he was granted permission to enter by a family member of the owner with a key. Although the Court initially allowed this claim to proceed on merit review given the "low hurdle of review under § 1915(e)(2)," (doc. 8 at 6), the Court agrees with Defendants that these allegations fall short of giving rise to a reasonable inference that Deputy Jones's conduct violated the Fourth Amendment. (*See* doc. 17 at 11); *see Brooks*, 578 F.3d at 582 ("[The allegation] does not put the defendants on notice of what exactly they might have done to violate [Plaintiff's] rights under the Constitution."). Considering the circumstances, the Court will allow Plaintiff one more opportunity to more fully satisfy the pleading requirements to make out a plausible Fourth Amendment claim for unreasonable search that gives notice to Defendant Jones of the claim asserted against him. The Fourth Amendment claim for unreasonable search against Defendant Jones is therefore dismissed without prejudice.

### 2. Arrest Without Probable Cause

The obvious and fatal defect in Plaintiff's Fourth Amendment claim for arrest without probable cause (*see* doc. 7 at 4) is the lack of any allegations naming which if any of the Individual Defendants arrested or were otherwise involved in the arrest of Plaintiff. Defendant Jones is not alleged to have been involved in the

---

[9] Plaintiff separately alleges the trailer's owner was later asked by Defendant King whether her stepfather had access to her trailer, and she responded that she did not think he did. (Doc. 7 at 7).

arrest, nor are any of the other Individual Defendants discussed hereafter. Consequently, Plaintiff's Fourth Amendment claim for unlawful arrest is dismissed without prejudice, and leave is given to file an amended complaint correcting this deficiency.

### 3. Selective Enforcement in Violation of Equal Protection

The claims against the other Individual Defendants not factually alleged to have been involved in the Fourth Amendment violations may proceed only if sufficiently tied to Plaintiff's claim of selective enforcement in violation of the Equal Protection Clause.

Defendant Deputy Jason Simmons allegedly spoke to Plaintiff's housemate's stepfather regarding the firearm in the trailer on February 15, 2019, then conducted a FOID inquiry and determined no one associated with the residence had a valid FOID card. (Doc. 7 at 6). Deputy Simmons, along with two other Individual Defendants, also prepared the incident report, which showed that both of Plaintiff's housemates had acknowledged the gun and ammunition present in their home. (Doc. 7 at 6–7). All Defendant Simmons' actions—speaking with the stepfather, conducting a FOID inquiry, and preparing an incident report—are "just as consistent with lawful conduct as . . . with wrongdoing," *Brooks*, 578 F.3d at 581, and fail to give rise to a plausible inference Defendant Simmons caused the alleged harm or acted discriminatorily toward Plaintiff. Accordingly, the equal protection claim against Defendant Simmons must be dismissed.

25

As for Defendant Detective Aaron King, Plaintiff alleges he questioned Plaintiff about the firearm, ran a Metcom[10] search of Plaintiff to ascertain he had no active FOID card, questioned Plaintiff's housemate about whether her stepfather had access to the trailer, audio- and videorecorded an interview with Plaintiff in an interview room at the Sheriff's Department, and asked Plaintiff for permission to search the residence. (Doc. 7 at 7). Detective King, along with two other Individual Defendants, also prepared the incident report, which showed that both of Plaintiff's housemates had acknowledged the gun and ammunition present in their home. (Doc. 7 at 6–7). Again here, nothing about these initial investigative procedures give rise to a reasonable inference that Detective King acted discriminatorily based on Plaintiff's race. The Motion to Dismiss is therefore granted with respect to claims against Defendant King.

The only allegation tying Defendant Sergeant Jody May to the 2019 incident is that Sergeant May approved the report for the incident on February 15, 2019. (Doc. 7 at 7). Similarly, Defendant Supervisor Brent Wick approved the report on February 15, 2019, and also stated he had interviewed Plaintiff. (Doc. 7 at 7). Plaintiff does not suggest either Defendant May or Defendant Wick knew of or were the cause of any constitutional violations. The Motion to Dismiss is therefore granted with respect to the claims against Defendants May and Wick.

---

[10] The Metro McLean County Centralized Communications Center (Metcom) is a communications network "that handles all Police, Fire, and EMS calls (emergency & non-emergency) for McLean County." *Metcom and ETSB*, McLean Cnty Gov't, https://www.mcleancountyil.gov/1106/Metcom-ETSB (last visited June 10, 2021).

Finally, because there are no factual allegations concerning Mclean County Sheriff Jon Sandage, all claims against him individually are dismissed.

### 4. Summation

In sum, Plaintiff fails to plausibly allege personal involvement in a constitutional violation by any Individual Defendant. Therefore, all claims against the Individual Defendants are dismissed. Regarding Plaintiff's equal protection claim for selective enforcement and Fourth Amendment claim for unlawful arrest, there are no allegations pled showing which of the Individual Defendants arrested, authorized, or participated in the decision to arrest Plaintiff to the exclusion of his white female peers. Plaintiff will be allowed to amend his First Amended Complaint to cure this deficiency. For Plaintiff's Fourth Amendment claim for unreasonable search of the trailer, the factual allegations make clear that only Defendant Jones conducted the search; therefore, Plaintiff will be allowed to amend his Fourth Amendment unreasonable search claim against Defendant Jones, but any Fourth Amendment unreasonable search claims against other Individual Defendants are dismissed with prejudice as amendment would be futile.

## V.   Monell Claim

The last claim that survived initial merit review is Plaintiff's equal protection claim against the Sheriff's office under *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658 (1978). As an initial matter, Plaintiff sued the Individual Defendants in their official, as well as individual, capacities. Naming a government official in his official capacity is the equivalent of naming the public entity itself as the defendant, thus requiring Plaintiff to make out a *Monell*-type proof of official

policy or practice as the cause of the constitutional violation. *See Hafer v. Melo*, 502 U.S. 21, 25. Therefore, because the official capacity claims are redundant to Plaintiff's *Monell* claim against the McLean County Sheriff, all other claims against the Individual Defendants in their official capacities are dismissed with prejudice. *See Hafer v. Melo*, 502 U.S. 21, 25.

Defendants argue that if all the "claims against the [I]ndividual [D]efendants are dismissed, Plaintiff's *Monell* claim . . .  must be dismissed as well." (Doc. 17 at 10). Indeed, municipal liability for a constitutional injury under *Monell* "requires a finding that [an] individual officer is liable on the underlying substantive claim." *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000) (alteration in original) (quoting *Tesch v. County of Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998)). Because all of Plaintiff's equal protection claims against the Individual Defendants have been dismissed without prejudice for insufficient allegations of personal involvement, Plaintiff's *Monell* equal protection claim must be dismissed as well.

If Plaintiff can remedy the deficiencies of his equal protection claims against the Individual Defendants, he can raise an associated *Monell* claim in the amended complaint. However, even if Plaintiff's *Monell* claim is re-pled, punitive damages may not be awarded against municipalities in § 1983 suits, *City of Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981), nor Title VI suits, *Barnes v. Gorman*, 536 U.S. 181, 182 (2002). Plaintiff's claim for punitive damages against the McLean County Sheriff is therefore dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (docs. 16, 17) is GRANTED IN PART and DENIED IN PART. The Mclean County Sheriff's Department is TERMINATED because it is not a suable entity. All claims arising from the 2016 incident are DISMISSED WITH PREJUDICE. Plaintiff's punitive damages claim against the McLean County Sheriff, claims against Defendants King, Jones, Wick, Simmons, and May in their official capacities, and Fourth Amendment claims for unreasonable search against Defendants Sandage, King, Wick, Simmons, and May are also DISMISSED WITH PREJUDICE. Plaintiff's Title VI claims against the Individual Defendants, equal protection claims against the Individual Defendants, Fourth Amendment claims for unlawful arrest against the Individual Defendants, Fourth Amendment claim for unreasonable search against Defendant Jones, and *Monell* equal protection claim against the McLean County Sheriff are DISMISSED WITHOUT PREJUDICE. Plaintiff may file an amended complaint within twenty-one (21) days of the date of this Order if, after reasonable inquiry, he is able to cure the identified factual deficiencies with these claims. Plaintiff's Title VI claim against the office of the McLean County Sheriff arising from the 2019 incident shall proceed.


SO ORDERED.

Entered this 11th day of June 2021.

_____
s/ Joe B. McDade

JOE BILLY McDADE
United States Senior District Judge